Ladies and gentlemen, we're here to hear the case of Lambright v. Schriro. Counsel. Good morning, Your Honors. Ms. Nigro. May it please the Court, I'm Jennifer Garcia. With me at counsel table is Dale Bache. We are from the Federal Public Defender's Office for the District of Arizona. We represent the petitioner in this matter, Mr. Joe Leonard Lambright. If possible, I'd like to reserve five minutes of my time for rebuttal. Yes, keep your track of your time and I'll try to remind you. No problem. Thank you, Your Honor. This appeal follows the district court's denial of Mr. Lambright's claim of ineffective assistance of sentencing counsel. We are here today to talk about what Mr. Lambright was able to prove at the evidentiary hearing, not about what we still don't know or what Mr. Lambright did not prove. At the hearing, Mr. Lambright proved that his trial. Now, what you're going to do right now is tell us what he established in the way of mitigating evidence at the time of the federal district court evidentiary hearing. Is that correct? Yes, Your Honor. And then you're going to compare that with what was before the sentencing judge at the time the sentence was imposed and at the state habeas proceeding. Is that correct? Yes, Your Honor. Okay. That is my plan. At the evidentiary hearing, Mr. Lambright proved that not only did his counsel fail to conduct a constitutionally adequate mitigation investigation and fail to present readily available evidence in mitigation, he chose instead to unreasonably rely on the court-ordered pre-sentence report to provide any mitigating evidence. Jumping ahead to the prejudice prong, since that's clearly where Your Honor would like to start, the important ---- I didn't mean to push it there. No, it's fine, Your Honor. Ms. Thompson was just asking what it was you had said you were going to do so we were clear as to what your plan was. My plan is to discuss both the deficient performance prong and the prejudice prong. But let's start with prejudice, because I think that that's a very important question here. Despite the district court's findings that Mr. Lambright was not prejudiced by his counsel's failure to conduct a reasonable ---- well, he didn't even find that trial counsel was unreasonable, the district court only considered a small portion of the evidence that was presented in mitigation at the hearing and further erred by limiting its consideration of the evidence to evidence that it believed caused the crime or could be somehow ---- Now you're saying the district court at the Federal district court hearing only articulated part of the evidence that Lambright actually presented. Yes, that's correct, Your Honor. What did he articulate, and how was it lacking? He discussed only a few minute areas of the mitigation evidence that was presented by Mr. Lambright at the hearing. For example, he discussed Mr. Lambright's allegation of PTSD, he discussed post-traumatic stress disorder, he discussed Mr. Lambright's allegation of methamphetamine abuse, and I believe spent a very short amount of time on the allegations concerning Mr. Lambright's childhood. And that was all he discussed. And in the district court's order, each of those discussions were limited to what would have affected Mr. Lambright's behavior at the time of the crime. So as far as the entire ---- But causal connection? Yes, Your Honor. Yes, Your Honor. As far as the entire other universe of mitigation evidence that Mr. Lambright had presented, starting from his childhood up until the time of his arrest, the district court simply ignored that evidence. So unless the district court believed that it was something that had affected the crime itself, it wasn't even discussed in the district court's order. For example, I have numerous examples of issues that were ignored by the district court. For example, regarding Mr. Lambright's childhood abuse and neglect, there was nothing presented at trial regarding the physical abuse from Mr. Lambright's mother. The only notation in that regard was a comment that she was strict in the pre-sentence report. Well, the reason for that was that at the trial, Mr. Lambright either didn't say that he was abused by his mother or denied it. Well, I think that that's true to some extent, Your Honor. However ---- Well, that's not necessarily the answer to the question ---- To the question. ---- that I'm trying to ask you, because counsel didn't conduct any investigation of that, or at least your position is he didn't conduct an adequate investigation. But on the other hand, what was before the sentencing court was not any information that he had been abused by his mother. Correct. The information was not ---- And he did not contend that at that time. Well, I'm not sure if anyone ever asked him, Your Honor. And, you know, abuse is not a subjective standard. Abuse is something that happens or doesn't happen. It's really not up to Mr. Lambright to decide if what happened to him was abuse. He can still be damaged by the very extreme physical abuse that he suffered from his mother and never reported. I think that's something that's common in abuse victims is that they do try to minimize or avoid it. Have you ever met anybody in your career who was a male who blamed his faults on his mother? Well, I don't ---- That might not mean that they aren't the cause of their faults, Your Honor. You might be right. Regardless of what Mr. Lambright said in response to the probation officer's questions in the pre-sentence report, we have uncontroverted and corroborated evidence that was presented at the evidentiary hearing regarding the physical abuse by his mother. We know that he was punished by being hit or whipped. We know that when he was six or seven, he was whipped daily every ---- his entire first year of school. We also know from his sister that Mr. Lambright suffered a lot from this punishment and she volunteered that she thought he would have done better as a child and a young man if he had been treated differently by his mother. When he was young, his family was very poor. They had no ---- they lived for a time in a house with no electricity, running water or indoor plumbing. Later, they lived for some time in a house that, quote, had terrible rats and holes in the wall and ceiling that had to be covered up by cardboard. They lived in Mexico for a few years, starting when Mr. Lambright was nine or ten. Because his mother never left her bed and because his sister was scared to leave the house in Mexico, Mr. Lambright was not supervised. What you have to establish or show to us, I think, is that evidence concerning his mitigation claims, if you will, was not presented to the state sentencing court. A lot of evidence exists, this would be your argument, I guess, that there were mitigating factors that should have been considered by the district court. Now, somewhere in your argument, what I'd like you to do is tell us just what was presented to the state sentencing judge, not what the district court did in this case, what was presented to the state sentencing judge, how lacking that was or meager it was, and what could have been presented with a reasonable investigation or whatever. Now, are you going to do that? Okay, Your Honor, yes. And let me start right now with what was presented to the sentencing court. The state sentencing court. The state sentencing court, yes. First of all, as the trial counsel has contended and as is the Respondent's position, there was a pre-sentence report that was in front of the trial court at sentencing. That pre-sentence report did contain several unsupported and unverified allegations that Mr. Lambright had used drugs in his life, that he had not had an ideal childhood. Several other comments about his family moving from place to place very frequently when he was a child. There were a few other things talking about the suicide attempts that Mr. Lambright had experienced and a psychiatric hospitalization. However, none of that was explained, put in context, supported in the record, and it all came directly from Mr. Lambright himself with some verification from a phone call to the probation officer. And this was all in the pre-sentence report or in Dr. Hinton's, who was a court-appointed doctor. Yes, Your Honor. There was some mention of this. That's where the two things came. I mean, that's what the facts that you're now mentioning were either listed in the pre-sentence report or in Dr. Hinton's report. Yes, Your Honor, to some extent. And his lawyer offered no facts. His lawyer filed, following the pre-sentence report, his lawyer filed what was called a memorandum of mitigating circumstances. Well, that was a list of things like his co-defendant didn't get a sentence. I mean, those were mainly legal statements. Yes, Your Honor. But no facts were offered. Very few. I think it contained an allegation saying apparently had an honorable discharge from the military with no records to support that. The way you present facts to a court is not in a memorandum. Exactly, Your Honor. The only evidence that was presented was the prison guard who said he was a nice boy while he was in prison. Exactly, Your Honor. While he was in jail awaiting trial, he didn't misbehave. Exactly, Your Honor. And I think that's a very important point. And I think another point I would like to make that I think is very important about the pre-sentence report itself, that if you look at that document as a whole and it's not very long, it's maybe 10, 11 pages long, it would certainly be unreasonable for anyone to look at that document and believe that it was something presented in mitigation to the court. The document, twice in the document, it quotes various individuals calling for Mr. Lambrecht to receive the death penalty. It contains a completely, to this day, unsubstantiated and unreported allegation that Mr. Lambrecht sexually abused his stepdaughter, which was never reported to anyone, was never verified in any way. It also, at the end of the document, which I think is perhaps the most telling thing here, at the end of the document, the probation officer calls for the court to find two aggravating circumstances, even though the trial court did eventually only find one, and also says that based on the evidence in the pre-sentence report, the court should find there are no mitigating factors. So the probation officer who prepared this report did not. Kennedy, why to follow up on Judge Thomson's question, why aren't the facts in the pre-sentence report and Dr. Hinton's report, why aren't they adequate? What to provide all the information the judge needed for mitigation? First of all, Your Honor, they were not provided in a way that would indicate to the court that they were facts in mitigation. They weren't corroborated or explained, and there's nothing in this report that would allow the trial court to give Mr. Lambrecht the kind of constitutionally individualized determination of sentencing that he's entitled to. Have you ever seen a probation report that this? Of course not, Your Honor. It's prepared by a probation officer at the request of the court. This person has no duty to Mr. Lambrecht. There's no requirement for the pre-sentence report writer to present mitigation. That's the job of trial counsel, and that's where we're missing here. We're talking about two things. Clearly, that affects the question of deficient performance. Yes, Your Honor.  And then your issue would be, are you prejudiced because the lawyer didn't look for more or didn't argue the mitigation? But do you feel that the facts that were before the court were sufficient on mitigation? No, Your Honor. And if not, why not? I absolutely do not. Get to the why not. Yes, Your Honor. I absolutely do not feel they were. First of all, the evidence that was presented there is in no means indicative of the rest of the significant mitigating evidence that was out there that counsel could have found and presented to the court. And we know that the trial court did not look at the pre-sentence report as containing mitigating information, because if you read the special verdict, the only mitigating factor that gets any real treatment, which I wouldn't even say is a lot, but a few had behaved well while in jail awaiting trial and sentencing. Let me try to take you through it then. Why wasn't the statement about drug use sufficient as it came in the pre-sentence reporting from Dr. Minton? Why was not that sufficient? Because, Your Honor, that was not presented in terms of here's what happened. It wasn't presented in terms of a picture of Mr. Lambright to explain who he was as a person. It was a bare, unsubstantiated allegation contained in a document that was full of other evidence and information urging that Mr. Lambright be given the death penalty. It was in no way presented to the court in a way that would allow it to see why it was mitigating. There was no explanation given of why it was something that would help explain this behavior, explain who Mr. Lambright was. Was the extent of the drug usage presented? No, not in no way, Your Honor. I think that as far as the drug, evidence of drug abuse in Mr. Lambright's life that was presented at the evidentiary hearing in the Federal district court, they were able to establish that actually Mr. Lambright's mother, who was a prescription drug addict, had actually started medicating Mr. Lambright with prescription drugs when he was as young as 6 or 7. So the fact that after that, after he had gone through various events in his life, that he would then undertake medicating himself with drugs is certainly, I think, a substantial mitigating circumstance that was in no way explained to the district court or to the sentencing court. The sentencing court didn't know that Mr. Lambright's mother was the one who got him started on drugs. They didn't know when Mr. Lambright started using drugs or why, in what context he began using them. None of that was presented to the court. One piece of the sentence that says Lambright reports using methamphetamines, uppers, downers and speed as contained in the pre-sentence report is not effective mitigation. Okay. How about the childhood? There was a mention of his, you know, less than ideal childhood that this man had in the pre-sentence report and from Dr. Minton. Why was not that adequate? Because less than ideal, Your Honor, is not, in no way captures the picture of what Mr. Lambright's childhood was like.  No, Your Honor. And I don't believe the pre-sentence report did include information about his mother beating him. No. I think it talked about his mother being hypochondriacal, religious, and strict, and that was it, and the fact that the family moved a lot. None of the rest of the information was even touched on or, I mean, in any way presented to the trial court. What about the suicide attempts? Were the two suicide attempts presented to the court? They were listed in the pre-sentence report, and I think they were also listed in the court clinic evaluation, but with no mention of the circumstances of his life, at the time of his suicide, no discussion of what happened, how it came about, nothing presented, simply two lines about the fact that he had tried to commit suicide. What about the hospitalization, hallucination? Was anything said about his hallucinations? Your Honor, I don't believe that it was necessarily presented to the sentencing court in terms of the circumstances in which he went to the mental hospital. I think that there was an allegation that he had been hospitalized for psychiatric reasons, but again, no records were presented. None of this was in any way explained. And that is a particularly compelling story, I think, Your Honor. If you look at it, I mean, we have, again, corroborated and uncontroverted evidence that Mr. Lambright was found cowering outside his sister and brother-in-law's door in the middle of the night screaming about seeing his parents burning, and as a result was taken to a mental hospital where he was kept at the Veterans Psychiatric Hospital, where he stayed for three days and left against medical advice, with doctors to be able to work through these things in order to go on with his life. And that is, of course, important and places Mr. — who Mr. Lambright is as a person at the time of the crime into context. And none of that was before the sentencing court in this case. This was a horrible analysis. Go ahead. This was a horrible crime, a really terrible crime. Yes, Your Honor. The jury found he did it, and he did all those terrible things. Why would the failure to present the details of these mitigating factors make any difference in this case? I think that this Court said it best in the opinion that remanded this case for an evidentiary hearing in the Federal District Court. Evidence in mitigation can affect the sentencing determination in even the most savage of cases. That's a quote from the opinion that remanded the case. And I think that that's true. I — we certainly agree that this is — the facts of this case are terrible. But in any case, murder — the facts of a murder are always terrible. I mean, I think that certainly there's a scale as to how bad they might be. But no matter how terrible the facts are, the explaining and contextualizing the defendant's life and letting the Court make the constitutionally required individualized sentencing determination is key. The Court can't know that the defendant is receiving the sentence, the correct sentence, unless it knows all these factors. And so many of them were not before the Court to even consider. In the final analysis, didn't the trial judge actually ignore entirely all the mitigating circumstances that were presented because she believed that the mitigating circumstances had to do with the commission of the crime? I think that is true, Your Honor. And that certainly is — for some time was the law in Arizona and the way the juries were instructed. I'm not positive if the jury was given an instruction — or if the judge followed that at the time. I'm sorry. Confusing two things. If the judge had followed that at the time of this. But that certainly was the law in Arizona, was to look for a causal nexus. And again, if you look at the presentence — or the special verdict, I'm sorry. If you look at the special verdict where the Court goes through and lays out what it finds in aggravation and what it finds in mitigation, the things that it finds in mitigation are — it never touches on any of these factors. It doesn't pull that information out. Well, it could be that — we could speculate as to why the Court didn't discuss as mitigating factors things like his mental health or his drug use. It could be because those were not presented as mitigating factors. Exactly, Your Honor, which goes to my point about the fact that the one thing that did receive any amount of treatment, real treatment, was the one witness that counsel did present about his conduct, Mr. Lambright's conduct while in jail. There was also other evidence that I think we have not really touched on that was not presented to the trial court but was, in fact, proven at the federal court evidentiary hearing involved the mental health issues that Mr. Lambright had. We discussed a little bit about his suicide attempts and the psychiatric hospitalization, but he also has a family history of severe depression, including a grandmother that did successfully commit suicide. Mr. Lambright has been diagnosed with depressive disorder by both Dr. Morenz and the respondent's expert, Dr. Lange. We also have corroborated evidence that Mr. Lambright acted differently when he returned from Vietnam, that he was irritable, withdrawn, restless, jumpy, he had trouble sleeping, he was agitated. These are all behaviors that we know were different from who Mr. Lambright was and how he acted before he entered the military. We know he experienced nightmares about Vietnam, including some that his ex-wife testified where he would be observed hollering, yelling, get down, get down, and grabbing her and telling her to get down because Viet Cong were hiding behind the bushes. He attempted suicide twice. He had a three-day stay in the mental hospital. And to this day, he still has nightmares, depression, and difficulty sleeping. On top of that, something that was never discussed at the trial court at sentencing was Mr. Lambright's PTSD. And I think this is something that received a lot of attention in the district court to the point, I think, of overshadowing a lot of the other evidence that Mr. Lambright had presented. But the bottom line is there were numerous traumatic events in Mr. Lambright's life, and I think we have presented evidence that Mr. Lambright still suffers from PTSD. Now, the district court made what might be called a finding of fact, I'm not sure, that the evidence was insufficient to show post-traumatic stress syndrome. PTSD, is that it? Yes, Your Honor. PTSD, anyway. But even though it might not be classified as post-traumatic stress syndrome, if the circumstances actually exist, whether they were caused by Vietnam or not, might be irrelevant to a certain extent. The question is, well, what was his mental condition? Not necessarily whether he had post-traumatic stress syndrome. No, exactly. I think that's a very important point, Your Honor. I think that even in respondent's expert, Dr. Lang, in her report, she says, she notes that there are numerous traumatic events that Mr. Lambright went through. And the question she really looked at in her report, if you read her report carefully, was whether or not a Vietnam-related post-traumatic stress disorder flashback or some sort of event was what caused the crime. She spent some time saying there's no allegation that he thought he was fighting the Viet Cong, that he thought, you know, anything related to Vietnam was happening at the time of the crime. That's simply not the question here. The question here is whether this is relevant mitigation evidence, and whether or not it was something that caused the crime, that's improperly limiting the evidence before the sentencing court. So if we're going to stand with the district court and say, well, this doesn't matter because it didn't cause the crime, that leaves out all the supporting evidence that was here, and I think it's significant in mitigating. If you have no further questions, Your Honor, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. May it please the Court, counsel. My name is Patricia Nigro. I represent Respondents in this matter. This Court remanded for an evidentiary hearing in this case based on Mr. Lambright's claim of post-traumatic stress disorder and his claim that his defense counsel failed to interview his sister before the sentencing hearing in his case. Both of those claims were definitively disproven at the evidentiary hearing. After an exhaustive investigation by Habeas Counsel and evaluation of Mr. Lambright by two different expert witnesses. Do you think that the stress syndrome is confined solely to combat the rifleman? I'm sorry, Your Honor. I didn't hear the beginning of your question. In order to be diagnosed with shell shock, we used to call it, did the person have to be a combat infantryman? There was a testimony that that was necessary. But in this case. Oh. What do you believe? Well, I don't think my belief is what is. What's the government's belief? The government's belief is that Mr. Lambright does not suffer from post-traumatic stress disorder. The only doctor who. Do you have to be a combat infantryman to suffer the syndrome? No. You do not. But that is not. Here, the only person who diagnosed Mr. Lambright with PTSD was Dr. Moran. He based that on the so-called combat event. I'm not talking about him, though. I'm talking about the government's position. And I'm concerned about what's going to happen to those young people who come back from Iraq. Do you have to be, my question is, do you have to be a combat infantryman in order to suffer the post-traumatic syndrome? No, Your Honor. A person could be a rape victim and suffer from PTSD. Could what? Could be a victim of rape and suffer from PTSD. There are different traumatic events. You could be a truck driver? A rape victim. Could you be a truck driver? I have no idea, Your Honor. I don't know. There's no testimony in this case based on that. I'm not talking about this case. I'm talking about your position regarding that syndrome because we're going to get a lot of cases coming in as a result of Iraq, and I want to know whether or not it's confined to infantrymen. I believe I answered no, it is not, Your Honor. Rape and what else? And who else? What else? Your Honor, I am not a psychologist. You can look at the DSM. How about an ambulance driver? A person has to experience a traumatic event for it to be diagnosed with post-traumatic stress disorder. That's one prong. That's not the entire... So you don't have to be a combat soldier then to suffer it? No. That's all I wanted to know. But in this case... That's the government's position. My position is that there are various traumatic events that a psychologist or a psychiatrist can use as a basis for diagnosing PTSD. In this case, Dr. Morenz, who is the only doctor who diagnosed Mr. Lambright with PTSD, based his diagnosis on the so-called combat event that was disproven at the evidentiary hearing. Mr. Lambright claimed that his friend, Neinhardt, died in his arms during a firefight. The government located Mr. Neinhardt, who is alive and well in Florida, who did not serve in Vietnam. He was a friend of Mr. Lambright's in Texas in the Air Force.  And the district court, whose factual findings are accorded some deference by this court, they were reviewed for clear error, found that that combat story was not credible. And that what he said was that Mr. Lambright is consistently inconsistent when he's telling stories about combat. Well, I think, as I read that record, the district court simply did not believe Lambright's testimony about seeing his buddy ripped in half by a machine gun, killing a couple of Viet Cong, or even being engaged in any combat activity himself directly while he was in Vietnam. And that because he had not been engaged in that kind of activity and the district court believed his story about it, the district court says, well, you are not suffering from post-traumatic stress disorder. Did I get that right that time? I believe so, Judge. Okay. Now, but just because he wasn't suffering from post-traumatic stress disorder because his story as to what he had done in Vietnam was not believable, how does that leave the other mental deficiencies, if you will, defects or mental aspects of his character? They still exist, don't they? Well, Dr. Lang did diagnose Mr. Lambright with personality disorder. So that's still there. That's still there. And depressive disorder. Yes, Your Honor. So his fabrication is part of the syndrome. Does the government understand that? There's no evidence of that, Your Honor. There's absolutely no evidence of that whatsoever. The government doesn't understand that? I can only go on what's in the record, Your Honor. He spent two years in Vietnam in a base that was attacked regularly. Sir, he spent four months in Vietnam. He spent one of those months in the Philippines. Four months. So three months. A base was attacked regularly. There were no casualties at all while he was at Phuket. And there was ample evidence from various people who were there at Phuket and commanders that there were no casualties while Mr. Lambright was there. The only casualties were pilots who — but there were no on-base casualties. The mental evidence — Yes, to get back to Judge Thompson's question about mental evidence, even at the sentencing hearing, the — Dr. Hinton, I think it was, who said that he had an antisocial personality disorder or something, which is a mitigating factor in Arizona. Isn't that right? This Court has found that it can be found as a mitigating factor. Defense counsel, Mr. Borno, did not think that the sentencing court would necessarily find that mitigating. That's right. But it is a mitigating factor under Arizona law. Well, actually, the Arizona Supreme Court has said it's not necessarily mitigating to have an antisocial personality disorder. A mental disorder can be mitigating. Yeah. But an antisocial personality describes a set of behaviors. The fact that you have these set of behaviors is not necessarily mitigating. Lots of cases have said, Ninth Circuit cases citing Arizona cases, have said that is a mitigating factor. That information was before the sentencing court, Your Honor. And it's not mentioned, is it, in the sentencing judge's report? When he goes through mitigating factors, he never mentions the mental disorder or the drug use. Now, could that be because the lawyer failed to point out to him that those were mitigating factors? I believe the sentencing judge did talk about some aspects of Mr. Lambwright's mental health, including the suicide attempts, including his dysfunctional childhood. I don't see that in the sentencing judge's report. The only thing I see is that he says he had an unsettled early life. That's correct. Most of it's devoted to what the lawyer argued. The lawyer argued that it was unfair because of the way the co-defendant was treated. And Mr. Bronia argued what he argued based on his belief at the time of what would be the most effective argument for this trial judge. And he had one mitigating factor, and he didn't argue it. In fact, he tried to say that he didn't have any mental health problems. Well, it was Mr. Bronia's belief at the time that what he was arguing, based on the time, based on that trial judge, that he was arguing the best case for mitigation for Mr. Lambwright. The best case was if the State's witness didn't receive any comparable treatment. She was let go. That was pretty powerful mitigation that Ms. Foreman escaped with absolutely no punishment whatsoever. It didn't seem to be so powerful in this case. Well, it's powerful, but then you have to compare it to the aggravation. And this Court itself has found that this crime was brutal and sadistic. And we can't ignore the fact that there is substantial aggravation in this case. And is that why he didn't mention the drug use or the anything other than they had an unsettled early life? Well, I believe he also talked about Mr. Lambwright's service, military service. He talked about a few other things in the special verdict. But are we talking about drug use or mental problems inconsistent with any of those other mitigating factors? It's not necessarily inconsistent, but as this Court has noted, that information was all before the sentencing court. It was presented. Now, whether it was presented by Mr. Bronia or presented in Dr. Hinton's report or the probation report, the information was still before the sentencing court. And Judge Rohl considered all that information. You think all you need to do in a capital case is to, for the lawyer to rely on the pre-sentence report, that he doesn't have any obligation to investigate any of it himself, even when the doctor says that there's some mental problems, that he doesn't have any obligation to conduct an investigation to make his own report, his own arguments, his own witnesses? When he has a doctor who's court-appointed who has come up with a diagnosis, I don't know he necessarily has the obligation to go out and get a different doctor. But that goes to the reasonableness problem. We still have to look at prejudice. And again, at the district court's hearing, the only thing new that was really presented was the extent of the abuse that Mr. Lambwright suffered at the hands of his mother. That was really the only new thing that was presented to the district court. That was based on Mr. Lambwright's statements. There was never anything in the sentencing court about a depressive disorder, was there? He was not diagnosed by Dr. Hinton with a depressive disorder. No. But that is new, then. Well, that could be. We don't know that he suffered from depressive disorder at the time of the crime. We're talking about evaluations that were done 20 years later. And he might be depressed now. Under his circumstances, that would make sense. But the question is whether he was depressed at the time. So what was the point of the States having him examined 20 years later? I mean, that was all irrelevant, what the State presented. Dr. Lamb's testimony? I'm saying it goes to the weight, Your Honor. And Dr. Hinton's evaluation was done at the time. The other examinations were done later, and the Court needs to take that into account. The only thing, as I said, the only thing new was something that Mr. Lambwright denied at the time of the sentencing. And at the time of the sentencing, he told Dr. Hinton he had not been abused as a child. And it's pretty hard to fault his counsel for failing to present something that he denied. And his counsel did speak with the ---- That's why counsels have investigations. His counsel did speak with Mr. Lambwright's sister, which is one of the reasons ---- And he doesn't remember what really went on in that investigation, in speaking to her. 20 years later, he doesn't remember the details. He does remember talking to her about the family, about Mr. Lambwright's background. She recalled the same thing. Well, see, her stories were a little inconsistent because in between she had this, whatever, a stroke, and her memory was affected. So we don't really know what, from her, what they talked about. I don't think there's ---- And his memory was very general also. Well, which is to be expected 20 years later, but I don't think that they're as inconsistent as Mr. Lambwright claims they are. I think she was pretty consistent that she talked to Mr. Boronia. She talked about the family. And, again, Mr. Lambwright could have told Dr. Hinton that he'd been abused. He denied it. And so that information wasn't before the sentencing court because Mr. Lambwright denied it. Later, we had an evidentiary hearing, and that was really the only thing new. And I think Ms. Garcia talked about the fact that the Court kind of focused on three areas in the evidentiary hearing, and the Court did so based on this Court's remand. This Court remanded based on the allegations. But nobody's complaining about the areas the Court focused on. The problem with what the Court focused on was the Court seemed to think it had to be a cause of the crime when the law is the opposite. Well, first of all, it's the government's position that that is not a certified issue. Obviously, this Court can consider it if it wants to. No, it's not a certified issue. But in order to review the district court's opinion, you have to see what his legal theory was. And I think if this Court looks at the district court's order and reads it carefully, what the district court was saying was not true. Well, I can assure you we read it carefully. I'm not trying to imply that you didn't, Your Honor. All right. I think that the Court can see that what the Court was doing, the district court looked at the mitigation. It considered the mitigation. It didn't find it weighty. And the Court is entitled to do that under Tenard. All that's required under Tenard and Smith is that the sentencer be able to consider and give effect to mitigation. It doesn't require the sentencer to do so. It doesn't require that because the defendant says, this is my mitigation, that the sentencer, A, find that, oh, you proved it, it's true, or, B, that you proved it and it's weighty. The sentencer can look at it and decide whether it's proved and if it is, what kind of weight to give it. And I think that the district court can do that. Well, it depends on whether the sentencing court, not the sentencing court, but if the district court's decision we're talking about, whether the district court thought it was not weighty because it didn't, was not connected to the crime. Tenard doesn't require the court to find it weighty. No, it doesn't require it to find it weighty, but if it says that it's not particularly persuasive because I don't think that that was the cause of the crime. Well, that's the State's position is that's fine to say that. Well, it's the State's position. But in that case, the evidence, for example, of post-crime conversion or behavior in prison, how could those things affect the crime or be a cause of the crime? But we know that those things are properly considered in mitigation. They're properly considered in mitigation. Something in this case, you have to look at the specific mitigation here. And the fact that Mr. Lambright is saying, as a child, I was beaten, and when I was 32, I committed this crime, and somehow that should be incredibly weighty mitigation, I think the district court's entitled to say, you're a 32-year-old man, talking about things that happened when you were a child, it's mitigation, but it's not particularly mitigating, because it's not particularly weighty. There's a difference between saying you have a drug problem, you have a mental health problem, you had a miserable childhood where you were beaten by your mother. You might view a person in that situation with some more sympathy than a person who had had all the benefits in life and had a happy experience and was just a sadist. You might look at the person differently. That's why it's mitigation. And it may not be persuasive mitigation, but it is mitigation. The judge seemed to think it was not mitigating unless it was the cause of the crime, that unless the drug use, unless he were under the influence. And that was why he committed the crime. That's a totally different argument from the fact that it's mitigating because this was his life, that you look at the person's life and you weigh that and say, should this person be treated, you know, with some leniency or should we not execute him, should we just keep him in jail for life because we've considered his life story? And I guess I just respectfully disagree with the Court's characterization of what the district court did. I believe, reading the order, that the district court did consider it but didn't find it particularly weighty, which is okay under Tanara and Smith. And the Court's got to weigh the mitigation somehow. And again, there was a very strong aggravating factor here, and the Court's left with the task of deciding if the mitigation is sufficiently substantial to call for leniency, and it's got to consider that in light of the aggravator, which was a brutal and sadistic murder of a mentally disabled young woman. Kennedy. Well, the only question here is not whether those mitigating factors are sufficient to overcome this and to make that kind of a decision as if the district court was the State court. The issue is, are these mitigating factors such? Can we say that no reasonable person might change his mind or come to a different conclusion if he'd heard the arguments in mitigation and heard the facts in mitigation? Maybe it could well be that they're not weighty enough to change the result. But are they weighty enough so that you can't have the same confidence in the result? And again, there's got to be a reasonable possibility of a different result, and that's when the Court has to look at what was before the sentencing court versus what was presented at the evidentiary hearing. And the district court specifically found the only new thing presented was the fact that Mr. Lambright claimed that he was abused as a child, which he originally denied. Kennedy. But in fact, he didn't have a lawyer, in effect, at the sentencing hearing. There was no argument made on any of the mitigating factors, the ones we're talking about now. There was no presentation of the facts underlying those factors. All there was is a sentence in a pre-sentence report or in a doctor's report. There was no advocacy of these, no presentation of the arguments, no suggestion to the judge that these were mitigating factors. I believe that Mr. Bernia testified that the standard or the practice at the time was to rely on the pre-sentence report and the psychological evaluation. There were specific details. In a capital case, if that's all you do is you let the State present a report and you don't have any obligation as a lawyer to conduct an investigation, make an argument, present facts in a capital case, that was the standard at the time? He did conduct an investigation. He did present mitigation, what he felt were strategically the best mitigating factors to present to the judge. And he also relied on the pre-sentence report and the psychological report, which were also before the judge. And I know Ms. Garcia said that there was very little information. It's my recollection, at least, and I believe the pre-sentence report is at Excerpts of Record 553. It does include a description of Mr. Lambright's incident where he went to his sister's house and he was talking about something about his mother and father burning. That's in there. The suicide attempts, the information is in there that he drove his car into a tree, that he overdosed. That information is in there. And it was before the sentencing court. And, again, he had two habeas counsel before the hearing. They did exhaustive discovery in this case. And they really couldn't come up with much new. Is it true that Brogdon, the only evidence that he produced at the sentencing hearing was the testimony of a prison guard who gave a favorable report about Lambright's behavior in jail? Is that true? Yes. The only witness he called was a jail guard from the Pima County Jail. That's true. That's true, Your Honor. Now, do you think that's a proper way for a defense counsel to conduct himself and his client in a death penalty case? Defense counsel has to work with what he has at the time, Your Honor. Does the State approve that conduct by a lawyer in a death penalty case? What the State would approve is a lawyer presenting one. Would you answer my question yes or no? Does the State of Arizona approve that type of conduct in a death penalty case? Well, I'm not sure I understand your question, Your Honor. So I can't really answer yes or no. The question is, the question is this. You say it's true that the only evidence that was produced by his attorney at the sentencing hearing was a testimony of a prison guard who gave a favorable review of his behavior in jail. That was the only witness. You say that is true. Now, do you – is it the policy of the State that when an attorney does that, that's permissible or not permissible in a death penalty case? It's not. That's acted as a lawyer in Arizona? Arizona lawyers do that? I think at the time, Mr. Burton's actions were reasonable, and there also is no prejudice in this case. This Court may find it to be unreasonable to do that, but then the Court still, to grant Mr. Lambert relief, has to find some prejudice. And the district court was exhausted. In order to answer the question, I have to assume that it's okay in Arizona, that that's all they do. I think in Arizona, the Court has to look at each particular case under Strickland. You have to look at the facts of each case, what the defense attorney is dealing with, what his client is telling him, how his client is acting. All that is something to look at under Strickland. You have to look at the actions in the context of the time of the case and the facts of the case. And that's under Strickland, and it's up to this Court to determine if that's reasonable or not. Obviously, under Strickland. But then the Court also has to look at the prejudice prong under Strickland. And you have to look at each case specific to its facts. To try and make Strickland doesn't talk about making a blanket rule of what's reasonable. It talks about looking at each case on its particular facts. And that's what the Court needs to do in this case, look at the particular facts of the case and look at is there prejudice to Mr. Lambert here. And again, Mr. Lambert, the reason he had an evidentiary hearing in this case is he was binging on drugs. This Court's opinion talks about an expert opinion presented that Mr. Lambert needed to have his mental condition at the time of the offense considered, which is one of the reasons that the district court looked at that. And again, once there was an evidentiary hearing and he was given the opportunity to present all this, there is no evidence that he suffers from PTSD. There was no evidence that his binging on drugs somehow contributed to his mental condition at the time of the crime. And that was after he was given the opportunity to present all that. And this Court itself has said when you look at mitigating evidence, for mitigating evidence to have weight, it's got to be either exculpatory or it's got to somehow diminish the person's culpability for the crime. And this Court said that in Allen v. Woodford. And if the Court looks at the mitigation that's been presented in the district court by Mr. Lambert, we would submit to you that it doesn't do either of those things. It's not exculpatory. And it doesn't diminish his culpability for this crime. And the Court needs to look at that when looking at all the mitigation. I'm not saying that Mr. Bernie did a perfect job. He's not required to do a perfect job under Strickland. He's required to do a constitutionally adequate job. I don't know that a defense attorney is capable of doing a perfect job. I don't think the State is. Kennedy. No one's talking about a perfect job. You can forget that question. I mean, certainly nobody would require a perfect job in any case, but nobody would suggest that counsel here did a perfect job. We all understand it's a constitutionally adequate job. And the question is, is it constitutionally adequate to not put on any defense at the capital stage to not make any argument about these particular items, the mental problems, the drug problem, the family problem, to not mention those items or put on any evidence regarding those items at the sentencing stage? But I think you're correct to concentrate on the prejudice argument, because it's Well, I'm certainly not conceding that it was inadequate representation. But I don't have a problem with focusing on prejudice, because there just isn't any prejudice here, because the Court needs to look at the information that was available at the time and any additional information that came to light later. And it's quite clear that the only additional information is information about child abuse. That's not clear that that's the only information. I mean, there are the medical, there is a medical testimony afterwards that was not presented, at least of depression and polysubstance dependency. Now, polysubstance dependency isn't something that developed after the time of the incident while he was in prison. And I doubt that the depression is what they were talking about, that they were talking about current rather than at the time. But there are various diagnoses of this mental condition that may not be sufficient, but is certainly the kind of thing that you want to have presented at the time of your sentencing hearing. And again, that goes to the reasonableness prong, not necessarily the prejudice prong. And then the Court needs to look at, if this had been presented, that the court, the sentencing court was aware that Mr. Lambert had used various drugs. It's not a big leap then to say that Mr. Lambert had a polysubstance abuse problem when it was aware that he was taking all these drugs through the pre-sentence report. So that's not a big leap right there. And I don't know that that's going to be the kind of thing, considering the aggravation in this case, that would have made the difference. I guess I would just like the Court to focus on the fact that this Court remanded on pretty, at least I think pretty specific issues, and it was whether Mr. Lambert was denied effective assistance of counsel because of failure to investigate and present evidence of his mental condition and his social history. And specifically, the Court talked about drug use and PTSD. Mr. Lambert. Well, it was not a limited remand. Pardon me, sir? It was not a limited remand. It was a remand on the ineffective assistance of the sentencing case. And those were the issues highlighted by the Court in its opinion, which I think is why the district court focused on that. I know Ms. Garcia said that Mr. Lambert was somehow prevented from presenting other mitigation. The only thing I can see in the record that he was not allowed to present were some pictures of him as a child. Other than that, he was allowed to present what he found to be mitigating. And the district court listened to all that evidence. It isn't as if the district court said, I'm not going to listen to this. It listened to all the evidence. Well, that wasn't suggesting the district court limited. I think the district court considered all the issues. And I guess, you know, in closing, I would just say this Court, you know, needs to look at a few things. You know, it's Mr. Lambert's burden of proof at the hearing to show that he got ineffective assistance of counsel. And it's not the State's burden to show that he got effective assistance. And the district court found that he didn't meet his burden because of the additional mitigation that he presented wasn't sufficiently weighty to outweigh the aggravation. And the factual findings of the district court are entitled to some deference for a clear error analysis. Obviously, the court reviews the ineffective assistance claim de novo. It's a mixed question of law and fact. But the actual factual findings are entitled to some deference. And the district court has a very, I think, exhaustive and pretty detailed order talking about the evidence that it heard and its findings on the evidence. And I would just ask that the court be given the deference that it deserves as far as the factual issues and that the court really look closely at the prejudice issue and what was presented at the sentencing, what wasn't presented because Mr. Lambert denied it at the sentencing, such as the child abuse, and then what was presented later at the evidentiary hearing and whether that would have made a difference. Thank you. Thank you. That's very good. Ms. Nigro, thank you. That's a good argument that you've made, and you're to be complimented on it. Thank you, Judge. I appreciate it. Mr. Lambert is not required to prove that the evidence he presented at the evidentiary hearing that was never shown to the district court would have made a difference in the outcome. The question here is whether or not it is something that undermines confidence in the outcome of the sentencing. And I think that in this case, the significant mitigation evidence that was offered at the hearing that was never presented to the sentencing court and that was ignored by the district court in its order is enough to have undermined the confidence or confidence in the outcome of the sentencing hearing. That's what Judge Thompson started asking you about at the very beginning. Why don't you just emphasize for us or highlight for us what you think was not presented at the sentencing hearing? Certainly, Your Honor. As I said before, I think there are many things that were not presented at the sentencing hearing, including the significant evidence of childhood physical abuse and neglect, the circumstances leading to his history of drug use and abuse, including the fact that his mother was the one who originally started giving him prescription medication to control his behavior, how his drug abuse itself developed and the reasons why it developed, the fact that Mr. Lambright has a family history of alcoholism and drug abuse, his mental health issues, including his family history of severe depression, his grandmother who committed suicide, his own history of severe depression, his multiple diagnoses of depressive disorder, his PTSD from the circumstances that arose, the PTSD symptoms that he displayed in his life, his suicide attempts, the circumstances surrounding them, his nightmares, his difficulty sleeping, all of those things. Those are all things that were proven at the evidentiary hearing that were never presented to the sentencing court in this case. And because all of this evidence exists and the sentencing court was never given the opportunity to consider it and what kind of effect it had on Mr. Lambright, our confidence in the sentence here is certainly undermined. And I would ask this Court to please remand this case for resentencing. Thank you, counsel. Ms. Garcia, you've also done very well in this case. You've worked very hard on it, and so has Ms. Nagro. I think you're both very good lawyers, and it's a pleasure to have you here in court. Thank you very much, Your Honor. Thank you. I appreciate that. Thank you both very much. Case J. Sergi will be submitted. The Court will stand in recess today. Thank you.
judges: Ferguson, Reinhardt, Thompson